### HART & CO. vs. ST. ROMES ET ALS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where offences are committed by slaves belonging to several masters, by their order, they will be liable as direct trespassers *in solido*.

But where the slave of A, in company with the slaves of B, commits an offence, it is clear that A cannot, according to the *Louisiana Code*, be made responsible beyond the value of his slave, if he thinks proper to abandon him.

After the master abandons his slave, he still retains a residuary interest: that if the sale of him produces more than the amount of the damages awarded, he is entitled to the surplus.

The master is not *in mora* in making the abandonment of the slave until three days after the judgment. Until the judgment is *res judicata*, the party has not lost his right of liberating himself by abandonment; or if the abandonment becomes impossible by a fortuitous event, without the fault of the master, he is liberated.

Where several slaves, belonging to different masters, commit a theft, the masters should be condemned to pay in proportion to the number of slaves respectively who were accomplices in the theft.

So where A was the owner of three out of five slaves concerned in a robbery, he is liable to pay three-fifths of the value of the stolen goods.

The plaintiff alleges that his store on Chartres-street, in the city of New-Orleans, was broken open by several slaves belonging to the defendants, and goods, jewelry and merchandise, to the value and amount of two thousand five hundred and fifty-six dollars and seventy-nine cents, stolen by said slaves, for which their masters are liable *in solido.* The petitioners annex an account of the goods stolen, with the value and amount thereof, and an affidavit that the account is true, and the loss happened in the manner described in the petition.

*St. Romes* pleaded a denial generally; and specially denied that there was any *solidarity* between him and the other defendants, or that his slaves had any agency in the theft alleged.

*Debuys* pleaded a general denial; and also abandoned his slave to be sold according to law in case of liability.

*Baylé* pleaded the general denial.

On the trial, the evidence fully established the robbery of the plaintiffs' store, of the goods and to the value and amount chàrged, by the slaves Charles, Sophia and Frontin, belonging to the defendant St. Romes, the slave Jean Pierre, belonging to Debuys, and slave Aglaë, owned by Baylé.

The district judge rendered judgment in favor of the plaintiffs for the amount of their claim, against the defendants *in solido.*

*St. Romes,* one of the defendants, appealed.

*Janin,* for the plaintiff, contended that the evidence fully justified the judgment of the District Court in relation to the amount of the plaintiffs' claim, and it must therefore stand.

2. The questions of law respecting the liability of the defendants, are also correctly decided and settled. When an offence is committed jointly, by several slaves belonging to

EASTERN DIST.
February, 1835.

HART ET ALS.
vs.
ST. ROMES ET ALS different masters, the latter are responsible, *in solido*, for the damages. *Louisiana Code, art.* 180, 2300, 2304. *Code of Practice*, 114. *Digest of Roman Law, lib.* 9, *tit.* 4, *de nox. act. lex* 41. *Ibid, lib.* 47, *tit.* 4, *lex* 1, § 19. 11 *Toullier*, 211, 403. *Pothier on Obligations, No.* 453. *Paillet, art.* 1384, *No.* 16. *Pothier's ed. Pandects, vol.* 4, *p.* 485—487, 489, 499, *translated into French.*

3. When the slave dies after the master is *in morâ*, or after the institution of suit, he is bound for the amount of damages and cannot liberate himself. *Digest, lib.* 9, *tit.* 4, *lex* 16, *de nox. act. lex* 26, §4. *Ibid, lib.* 44, *tit.* 7, *(de oblig.) lex* 45, *note* g *of Godefroy. Ibid, lib.* 9, *tit.* 4, *(de nox. act.) lex* 29, § 4.

4. The last mentioned point does not bear on this case, as the surviving slaves were not abandoned within the legal delay.

*Canon, contra.*

*Bullard, J.,* delivered the opinion of the court.

This suit was instituted to recover of the defendants, *in solido*, the value of certain merchandise alleged to have been stolen, at different periods, by the slaves of the defendants, from the store of the plaintiffs. The District Court was satisfied, from the evidence adduced, that the thefts were committed by Jean Pierre, a slave of Pierre Debuys ; by Charles, Sophia, and Frontin, belonging to the defendant, St. Romes ; and Aglaë, a slave of the other defendant, Baylé, and condemned the masters to pay, *in solido*, the value of the stolen goods, to wit : the sum of two thousand five hundred and fifty-six dollars and seventy-nine cents. From this judgment St. Romes alone has appealed.

The evidence in the record, which we have attentively examined, satisfies our minds, as it did that of the judge *a quo*, that the slaves above mentioned committed the depredations in question, and the plaintiffs are entitled to remuneration, at least to the value of the slaves. But it is contended that the judge erred in condemning the masters, *in solido*.

On the other hand, it is urged that if the slaves were persons, *sui juris*, they would be liable, *in solido*, for damages committed by them jointly, and that the masters are liable in the same manner the slaves would be if personally amenable in an action of trespass. It is a well settled doctrine of our law that *solidarity* is never implied. It is equally true that joint trespassers are severally bound, but the. Code has regulated the responsibility of masters in a manner which seems to us inconsistent with the idea of *solidarity*, properly so called. Articles 180 and 181 declare the liability of the master for the offences and *quasi* offences of his slave, but expressly provide that he may discharge himself from such responsibility by abandoning his slave to the person injured, provided the abandonment be made within three days after the judgment awarding such damages, and that the offence was committed without his order.

Where offences are committed by slaves belonging to several masters, by their order, we have no doubt the masters would be liable as direct trespassers, *in solido*. But if the slave of A, in company with several slaves of B, commits an offence, it is clear that A cannot, according to the Code, be made responsible beyond the value of his slave, if he thinks proper to abandon. In what sense of the word, then, can he be said to be bound, *in solido*, with B? It surely will not be pretended, that if the owner of the larger number of slaves concerned in a robbery should pay the whole amount of damages committed, he would be entitled to an action against the other masters whose slaves were accomplices, to compel an equal contribution, as in the case of an obligation *in solido*. Such a proceeding would equally violate the positive provision of the code, according to which the liability of the master is in all cases measured by the value of the slave, if he chooses to surrender him. It would be permitting that to be done indirectly which could not be done directly.

Where offences are committed by slaves belonging to several masters, by their order, they will be liable as direct trespassers *in solido*.

But where the slave of A in company with the slaves of B, commits an offence, it, is clear that A cannot, according to the *La. Code*, be made responsible beyond the value of his slave, if he thinks proper to abandon him.

But the counsel has called our attention to numerous passages of the Roman Digest, particularly the 4th title of the 9th book, which treats of the *actio noxalis*, and which, he supposes, support the doctrine contended for by him. It

EASTERN DIST.
February, 1835.

HART ET ALS.
vs.
ST. ROMES ET ALS
results from all those provisions of the Roman laws, according to our understanding of them, that the *actio noxalis*, properly speaking, was essentially an action *in rem*, and followed the offending slave into whosoever hands he might pass after the commission of the offence. Not only might the master liberate himself by an abandonment of the slave, but the death of the offender, before the master was in delay in relation to the abandonment, operated, *ipso facto*, as a release of his liability. In cases where the master had fraudulently ceased to possess the slave, as by conniving at his escape with a view to evade responsibility, he was liable to the *Pretorian action*, and had no longer the right to abandon. It is in reference to this action, and not to the direct *noxalis*, that Julian declared, in the passage particularly relied upon by the plaintiffs' counsel, that if a slave belonging to several masters commit a theft, the party injured might select either of the owners and recover the whole damage. The case supposed by him, is when all the joint owners participated in the fraud practised, to evade the direct action : *Omnes dolo fecerint quominus sum in protestate haberant.* The same principle would apply where several slaves belonging to several masters had concurred in the offence, and all the masters had united in an attempt to remove the slaves fraudulently. In that case they would become personally wrong doers, and each responsible, *in solido*. In all such cases the party aggrieved had a right to pursue the slave himself, *actione noxali*, or to resort to the *Pretorian action*.

The passage in the 47th book of the Digest, on which the counsel also relies, does not appear to us to sustain him. The principle therein established is, that if several slaves are emancipated and fraudulently commit a trespass, each is liable, *in solido ;* and in cases of crimes it goes further : *"Ex cum ex delicto conveniatur, exemplo furti, nullus eorum liberetur, etsi unas conventus præstiterit."*

The counsel for the plaintiff contends for the further proposition, that when the slave dies after the master is *in mora,* or after the institution of the suit, the master is bound for the full amount of damages, and cannot liberate himself by an

abandonment. A careful examination of all the laws cited in support of this doctrine, has brought us to the conclusion, that in relation to the direct *actio noxalis* the master might abandon even after judgment. A distinction is made : if the master abandoned at the inception of the action, the complainant became seized only of the rights of the master, such as they were, and the master was fully released. If he made a defence and abandoned after condemnation, he was bound to convey the whole property in the slave, and became, in effect, warrantor of title : " *Sed oportet ret hujus dominium in solidum et pleno jure transferat in actorem.*"

Our own code, while it has adopted the general principles of the Roman law, in relation to this action, has at the same time created some remarkable differences. In the first place, the abandonment on the part of the master, does not vest in the party aggrieved, the title to the offending slave. The master still has a residuary interest, if a sale of the slave produces more than the amount of the damages awarded. In the second place, the master is not in delay in making this abandonment, until three days have expired after the judgment. Until the judgment has acquired the authority of the thing adjudged, we are of opinion the party has not lost his right to liberate himself by an abandonment; and if the abandonment becomes impossible, by a fortuitous event, without the fault of the master, he is liberated from responsibility.

We have thought proper to be thus minute in the investigation of these questions, and perhaps, to anticipate some which may arise in the further prosecution of this case, because the case is novel and the principles involved important in this state. Our researches have not enabled us to find a single case, in which the responsibility of several masters, in relation to each other, for the joint offence of their respective slaves, has been judicially settled. The Code does not expressly provide for a case of this kind. In the absence of positive enactments, we think ourselves bound to decide according to natural equity, and in such a way 'as not to violate any settled principles in relation to the liability

The master is not *in mora,* in making the abandonment of the slave, until three days after judgment. Until the judgment is *res judicata,* the party has not lost his right of liberating himself by abandonment; or if the abandonment becomes impossible by a fortuitous event, without the fault of the master, he is liberated.

Where several slaves belonging to different masters, commit a theft, the masters should be condemned to pay in proportion to the number of slaves respectively, who were accomplices in the theft.

of masters, and more especially, not to make one master liable for the thefts committed by the slaves of another, nor for those committed by his own, beyond their value, if he makes a fair abandonment in due time.     The rule of decision which, after mature reflection, appears to us most equitable and in consonance with those principles is, that the masters should be condemned to pay in proportion to the number of their slaves respectively, who were accomplices in the commission of the offence.    St. Romes is the only party who has appealed, and he is shown to be the owner of three out of the five slaves concerned in the robbery, and, in our opinion, is liable to pay three fifths of the value of the stolen goods.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed and annulled, and that the plaintiffs recover of the defendant and appellant, St. Romes, the sum of fifteen hundred and thirty-four dollars and seven cents, with costs of the District Court, those of the appeal to be borne by the plaintiffs and appellees; provided that this judgment shall be without effect, if, within three days after it shall have become final, the defendant shall abandon the surviving slaves, Charles and Frontin, according to law.